UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-MJ-02369-AOR-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ENRIQUE TARRIO,

    Defendant.

_____/

**DETENTION ORDER**

On March 15, 2022, this Court held a hearing pursuant to 18 U.S.C. § 3142(f) to determine whether Defendant Enrique Tarrio ("Defendant") should be detained prior to trial. The Government moved for pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(A), 18 U.S.C. § 3142(f)(2)(A), and 18 U.S.C. § 3142(f)(2)(B). Having considered the factors enumerated in 18 U.S.C. § 3142(g), this Court finds by clear and convincing evidence that Defendant presents a danger to the community and that no condition or combination of conditions will reasonably assure the safety of the community. Therefore, it is hereby **ORDERED** that Defendant be detained prior to trial and until the conclusion thereof.

In accordance with the provisions of 18 U.S.C. § 3142(i), the Court hereby makes the following findings of fact and statement of reasons for the detention:

1. Defendant is charged by indictment with Conspiracy to Obstruct an Official Proceeding, in violation of 18 U.S.C. § 1512(k); Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2); Obstruction of Law Enforcement During a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); Destruction of Government Property, in violation of 18 U.S.C. § 1361; and Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1).

2. There is a rebuttable presumption in favor of detention because Defendant is charged with felony destruction of government property (18 U.S.C. § 1361), a statute listed in 18 U.S.C. § 2332b(g)(5)(B) that carries a maximum term of imprisonment of 10 years or more. 18 U.S.C. § 3142(e)(3)(C). The Government additionally avers that Defendant presents a serious risk of flight and a serious risk that Defendant will attempt to obstruct justice. 18 U.S.C. § 3142(f)(2).

3. The nature and circumstances of the offenses charged are serious. The following facts were proffered and supported by the testimony of Nicholas Hanak, an Agent with the Federal Bureau of Investigation, who adopted the facts proffered in the Government's pre-hearing memorandum. *See* (ECF No. 9-1).

4. In the weeks leading up to January 6, 2021, Defendant spearheaded a conspiracy to corruptly obstruct, influence, and impede the Certification of the Electoral College Vote resulting from the 2020 Presidential Election. (ECF No. 9-1 at 3). During that period, Defendant was the national chairman of the Proud Boys organization, which describes itself as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world; aka Western Chauvinists." (*Id.*). Proud Boys members routinely attend rallies, protests, and other events, some of which have resulted in violence involving members of the group. During one of those events, which took place on December 12, 2020, Defendant participated with a group of Proud Boys in the theft and destruction of a banner that belonged to a downtown Washington, D.C., church. Defendant's destructive act—burning a "#BLACKLIVESMATTER" banner—was caught on film. (*Id.*). Following Defendant's destructive act, plans were announced on December 19, 2020 for a protest in Washington, D.C., to coincide with Congress's January 6, 2021, Certification of the Electoral College vote. Beginning in late December 2020, Defendant created a new chapter for the Proud Boys, referred to as the Ministry of Self Defense or MOSD ("MOSD"). The

Government proffered that Defendant described the MOSD as a "national rally planning" chapter that would include only "hand selected members." (*Id.*). Tarrio created a group chat on the encrypted messaging platform WhatsApp exclusively for these MOSD members.

5.  On January 4, Tarrio traveled by plane from Miami, Florida to Washington, D.C., knowing that upon his arrival he would be arrested for his December 12, 202 burning of the "#BLACKLIVESMATTER" banner. (*Id.* at 7). Defendant was detained briefly, and upon his release on January 5, he was ordered to leave the District of Columbia. Following his release, instead of immediately leaving the District of Columbia, Tarrio travelled to an underground parking garage, along with a documentary film crew, and met with members of the MOSD, as well as Elmer Stewart Rhodes III, the founder and leader of the Oath Keepers. (*Id.* at 8).

6.  Pertinent to this motion for pretrial detention, the Government advanced evidence that Tarrio attempted to destroy and conceal the evidence of his and others' involvement in the conspiracy. Following his release on January 5, "Tarrio told another individual in the underground parking garage that he had cleared all of the messages on his phone before he was arrested. Tarrio further stated that no one would be able to get into his phone because there were 'two steps' to get into it." (*Id.* at 8).

7.  Although Defendant was not physically present at the Capitol on January 6, the Government offered evidence that he exercised "command and control" over the MOSD through use of social media and encrypted messaging applications. Ethan Nordean and Joseph Biggs specifically indicated that they were being instructed by Tarrio, and the evidence reveals that they sought and obtained Defendant's approval of the January 6 plan. As the events of January 6 unraveled, Tarrio claimed credit for the scenes taking places in and around the Capitol on public social media platforms. Shortly after a 42 second call with Biggs while Biggs was still on Capitol

grounds, Tarrio posted the message "Don't fucking leave," followed by the messages "1776" and "Revolutionaries are now at the Rayburn building." (*Id.* at 4, 17). Tarrio additionally sent messages assuming credit for the events, including "Make no mistake…" and "We did this…" The above proffer was adopted by the testifying agent and corroborated by the messages; the weight of the evidence against the Defendant is substantial.

8. The Court has additionally considered the pertinent history and characteristics of the Defendant. He has stable ties to this community and significant family support. He is thirty-eight years old and was born in Miami, Florida, where he has resided his entire life. He is employed by a company that his sister owns. He currently lives with his grandfather and girlfriend. Numerous family members and supporters of Defendant attended the hearing; counsel proffered that all of those present were willing to co-sign on a bond on his behalf. The agent further testified that no evidence has been developed in the investigation indicating that he is a flight risk.

9. Defendant's criminal history includes three prior convictions, including an August 22, 2013, conviction stemming from Tarrio's participation in a conspiracy to unlawfully profit by receiving, possessing, and reselling stolen diabetic test strips, resulting in an original sentence of 30 months' imprisonment which was later reduced to 16 months and restitution. (ECF No. 9-1, at 18) (citing *United States v. Tarrio*, Case No. 1:12-cr-20947-JAL (S.D. Fla. 2013)). His criminal history additionally includes violations of probation. Most notably, the acts alleged in this case occurred while Defendant was released on another court's bond.

10. Defendant argues that since January 6th, there is no evidence advanced by the government that he has been responsible for congregating individuals, and further proffered that his meeting post-release on January 5th in the parking garage did not technically violate the court's

order to leave DC because, he proffered, he was permitted up to midnight to depart the District of Columbia.

11. Defendant argues that a personal surety bond, co-signed by family members and with restrictions such as home detention, is adequate to reasonably assure both his appearance as required and the safety of the community. While the proposed bond may adequately address his appearance, it is inadequate to provide reasonable assurance of the safety of the community in light of the unrebutted evidence that undermines the Court's confidence that he would obey such restrictions. In particular, the undersigned notes the unrebutted evidence that Defendant committed the alleged acts while he was on bond for another offense, thereby violating that court's bond; and his apparent attempt to conceal or destroy his and other's communications relating to their plans for January 6th, thereby substantiating the government's motion predicated on the risk that he would obstruct justice. 18 U.S.C. § 3142(f)(2). Neither fact was disputed at the hearing.

12. Having considered the facts and circumstances of the offense, nature and characteristics of the Defendant and being otherwise apprised of the circumstances, I find that there are not any conditions or combination of conditions that would reasonably assure the safety of the community as required by statute. 18 U.S.C. § 3142(e). Accordingly, the Court hereby directs:

a. That Defendant be committed to the custody of the Attorney General for the confinement in a corrections facility separate, to the extent practical, from persons awaiting or serving sentences or being held in custody pending appeal;

b. That the Defendant be afforded reasonable opportunity for private consultation with counsel; and

c.  That, on the order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 17th day of March, 2022.

_____
LAUREN FLEISCHER LOUIS
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record
Pretrial Services (Miami)